UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DINESOL BUILDING PRODUCTS, LTD., | ) ) ) | CASE NO. 4:04CV185 |
| Plaintiff, | ) ) | JUDGE JAMES S. GWIN |
| | ) | Magistrate Judge George J. Limbert |
| v. | ) ) | |
| TAPCO INTERNATIONAL, INC., | ) ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

The instant matter is before the Court on the motion of Plaintiff Dinesol Building Products, Ltd. ("Plaintiff" or "Dinesol Products") for contempt and request for fees and costs. *See* ECF Dkt. #54 ("Motion"). On December 6, 2005, United States District Judge James S. Gwin issued an order enforcing a September 2004 settlement agreement between Dinesol Products and Defendant Tapco International, Inc. ("Defendant" or "Tapco"). *See* ECF Dkt. #49 ("Enforcement Order").[1]

---

[1] Besides the Motion, the filings before the undersigned consist of Tapco's memorandum in opposition and Plaintiff's reply brief. *See* ECF Dkt. #s 57, 61. The undersigned heard oral arguments on the instant matter on February 15, 2006. H. Alan Rothenbuecher and Robert J. Herberger, Jr. appeared on behalf of Dinesol Products, and Jeffrey A. Sadowski and James H. Geary appeared on behalf of Tapco. During oral arguments, the undersigned attempted to bring the parties to a consensus. *See* ECF Dkt. #68. The parties stated that they would attempt to reach a compromise on the Plaintiff's Motion in the days following argument; unfortunately, on February 24, 2004, counsel for Dinesol Products informed the undersigned that the parties had reached an impasse on the Plaintiff's request for contempt and resulting fees and costs.

In the Motion, which Judge Gwin referred to the undersigned for a report and recommendation, Plaintiff contends that Tapco has not complied with the Enforcement Order. Plaintiff moves the Court to find Tapco in civil contempt of the Enforcement Order and asks for reimbursement of the fees and costs it has incurred as a result of Tapco's alleged noncompliance. Tapco maintains that it has not violated the Enforcement Order. Because the undersigned finds that Tapco has not complied with the Enforcement Order, the undersigned recommends that Plaintiff's Motion be GRANTED and that Tapco be found in civil contempt of the Enforcement Order and ordered to pay Dinesol Products' fees and costs resulting from Tapco's noncompliance.

## I. BACKGROUND

Dinesol Products and Tapco compete against each other in the manufacture and sale of plastic residential shutters. On February 3, 2004, Dinesol Products instituted the instant case against Tapco seeking a declaratory judgment of non-infringement and unenforceability of certain trade dress and patents relating to the manufacture, sale, and distribution of plastic molded utility plate covers and plastic louvered gable vents (*i.e*., building accessories). Tapco counterclaimed, alleging patent infringement of the building accessories, and trade dress infringement, unfair competition, "passing off," and misappropriation of the trade dress by Dinesol Products' plastic shutters.

In September 2004, Tapco settled and released all claims relating to Dinesol Products' plastic shutters, including claims for trade dress and patent infringement arising from Dinesol Products' standard and custom shutters. *See* Motion, Ex. A (memorializing settlement and release in a settlement agreement executed on September 10, 2004). Pursuant to the settlement

agreement, Dinesol Products made various changes to its shutters, necessitating modifications to Dinesol Products' molds and related tooling. In return, the settlement agreement memorialized Tapco's intent to forever release Dinesol Products from any and all claims relating to Dinesol Products' shutters.

On March 10, 2005, Tapco sued Dinesol Products in the U.S. District Court for the Eastern District of Michigan. *See Tapco Int'l Corp. v. Dinesol Products, Ltd., et al.*, Case No. 05-70934 ("Michigan Litigation"). In that case, Tapco alleges that Dinesol Products' shutters infringed on its patents. Plaintiff contends that Tapco sought to circumvent the clear and unequivocal language of the release, wherein Tapco released Plaintiff from any and all claims of patent infringement related to its plastic shutters. However, Tapco argued that the broad mutual release it signed did not preclude it from asserting patent infringement claims for specific "custom-length" shutters.

In an attempt to halt the Michigan Litigation, Dinesol Products filed a motion to enforce the settlement agreement with this Court on April 14, 2005. *See* ECF Dkt. # 41. Plaintiff sought an order enforcing the settlement agreement and barring the Michigan Litigation. Plaintiff argued that the plain language of the settlement agreement precluded Tapco from pursuing the Michigan Litigation. This Court agreed, and on December 6, 2005, it granted Plaintiff's motion to enforce settlement holding that the broad and expansive language in the settlement agreement released Dinesol Products from all claims of patent infringement with respect to its plastic shutters (whether standard or custom-length). In the Enforcement Order, Judge Gwin specifically stated that the settlement agreement "bars Tapco from asserting patent infringement claims related to Dinesol's custom shutters in the [Michigan Litigation]." Enforcement Order at

3

7. Tapco subsequently moved to stay the Enforcement Order pending appeal, but Judge Gwin denied Tapco's request, reiterating that "[t]he purpose of the [Enforcement] Order was to enjoin Tapco from prosecuting its lawsuit against Dinesol (Case No. 2:05-cv-70934) in the United States District Court, Eastern District of Michigan. To stay the [Enforcement] Order pending a decision in the Federal Circuit would allow the Michigan Litigation to continue, with all the attendant costs." ECF Dkt. #65. The Court could not have been clearer—the Enforcement Order mandated that Tapco not pursue the Michigan Litigation.

Plaintiff argues that Tapco has violated the Enforcement Order by continuing to prosecute its action against Dinesol Products and another entity called Dinesol Plastics in the Michigan Litigation. Plaintiff calls the Court's attention to a so-called *Markman* brief that Tapco filed on December 2, 2005 in the Michigan Litigation. Dinesol Products claims that it had to file a responsive brief on December 16, 2005 after Judge Gwin entered the Enforcement Order because Tapco did not move to stay or dismiss the Michigan Litigation. During oral argument, Dinesol Products also explained that it has been forced to file dispositive papers in the Michigan Litigation and bring contempt proceedings in the instant case because Tapco refuses to comply with the Enforcement Order.

Within the Michigan Litigation, the parties dispute whether Dinesol Plastics is properly retained as a Defendant. At oral argument, counsel for Dinesol Products stated that Tapco had added Dinesol Plastics as a party to the Michigan Litigation in September 2005. *See* ECF Dkt. #68. Dinesol Products contends that the Enforcement Order and settlement agreement not only released itself but also released Dinesol Plastics, because Dinesol Plastics acted as an agent for Dinesol Products. Tapco disputes this assertion and has argued in the Michigan Litigation that

4

Dinesol Plastics is not an agent for Dinesol Products.

In a letter to the Court dated February 17, 2006, counsel for Dinesol Products delineated the tasks that have befallen Plaintiff in seeking Tapco's compliance with the Enforcement Order. *See* ECF Dkt. # 67. The tasks included:

> analysis of the Court's [Enforcement Order]; strategy discussions among Dinesol's counsel; seeking compliance from opposing counsel; preparing and filing the Motion for Contempt and Fees/Costs and the reply brief for that motion; preparing and filing in Michigan the Motion to Stay the Michigan proceedings; preparing and filing in Michigan the Motion to Dismiss the Michigan action; and preparing and filing reply briefs for those motions filed by Dinesol.

*Id.* at 1. Dinesol Products also included a summary of the fees and costs it has incurred in seeking Tapco's compliance with the Court's Enforcement Order, along with detailed billing records from December 2005 and January 2006, which were filed under seal with the Court. *See id.*, Exs. 1, 2. The fees and costs total $59,701.35.[2] Upon an in camera inspection of the December 2005 and January 2006 billing records, the undersigned determined that Dinesol Products incurred approximately $4,071.25 of the fees before entry of the Enforcement Order. Therefore, the fees and costs Dinesol Products incurred in seeking Tapco's compliance with the Court's Enforcement Order from the entry date of December 6, 2006 onward amounts to $55,630.10 (hereafter referred to as the "Fees and Costs").

---

[2]Attached to its Motion, Dinesol Products set forth three different classes of fee requests. The first class consisted of all fees incurred in seeking compliance with the Enforcement Order from December 6, 2005 onward. The second class consisted of all fees incurred in seeking enforcement of the settlement agreement. The third class consisted of all fees incurred in the Michigan Litigation and the instant case since the filing of the Michigan Litigation.

In its summary of the Fees and Costs, Dinesol Products has excluded those expenses attributable to just Dinesol Plastics in the Michigan Litigation, such as expenses for preparing a supplemental brief, attending conferences with the special master and half of the fees and costs of preparing a motion to dismiss and reply brief. *See* ECF Dkt. #67. Dinesol Products also excluded those expenses it incurred for settlement discussions, appeal tasks and in opposing the motion Tapco filed in the instant case to stay the Enforcement Order pending appeal. *See id.*

According to Dinesol Products, Tapco has continued to aggressively pursue its claims in the Michigan Litigation, thus ignoring the Court's Enforcement Order. As a result, Dinesol Products requests that Tapco be found in civil contempt of this Court's Enforcement Order and that Tapco be ordered to reimburse Dinesol Products for the fees and costs it has incurred as a result of Tapco's non-compliance.[3]

Tapco argues that it has not ignored the Court's Enforcement Order and that the order does not prohibit them from pursing the Michigan Litigation. Tapco stresses that the Enforcement Order is not an injunction that prevents it from resolving its dispute with Dinesol Products in the Michigan Litigation. In response to Dinesol's correspondence to the undersigned, Tapco asks that any award of fees or costs be tabled until the Federal Circuit decides the appeal that has been filed in the instant case. *See* ECF Dkt. #69. Tapco also argues that any fees and costs that have been generated in the Michigan Litigation would be unchanged if Dinesol Products was not a party, because Tapco has also sued Dinesol Plastics. *See id.*

---

[3]Dinesol Products also requests alternatively that its attorneys' fees and costs be awarded pursuant to 28 U.S.C. § 1927.

**II.     LAW AND ANALYSIS**

Federal courts have the inherent power and authority to punish for contempt. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). Federal courts are also empowered by statute to punish by fine or imprisonment, at the court's discretion, contempt of the court's authority. *See* 18 U.S.C. § 401; *U.S. v. Powers*, 629 F.2d 619, 624 (9th Cir. 1980) (statute applies to both civil and criminal contempt proceedings) (citing 18 U.S.C. § 401). Moreover, the court may do so during the pendency of an appeal. *See NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 588 (6th Cir. 1987) (if judgment has not been stayed or superseded, district court may enforce judgment).

Civil contempt results when a party refuses or fails to promptly obey a court order proscribing certain conduct. *See Cincinnati Bronze*, 829 F.2d at 590-591. Willfulness need not be shown. Civil contempt is established by demonstrating through clear and convincing evidence: (1) an order of the federal court requiring the litigant to perform or refrain from performing a particular act; (2) the litigant's knowledge of the order; and (3) violation of the order. *See id*. Thus, intent is not an element of civil contempt. *See McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949). "In contempt proceedings, the basic proposition is that all orders and judgments of courts must be complied with promptly." *Cincinnati Bronze*, 829 F.2d at 590.

Punishment for civil contempt is remedial in nature and is intended to compensate the complainant for losses sustained, and to coerce obedience with the court's order for the benefit of the complainant. *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994). The costs and attorneys fees incurred by the aggrieved party in initiating contempt proceedings may be awarded to the complainant as a remedy for civil contempt. *In re Jacques*,

7

761 F.2d 302, 306 (6th Cir. 1985), *cert. denied*, 475 U.S. 1044 (1986).

"Broadly, the purpose of civil contempt is to coerce an individual to perform an act or to compensate an injured complainant." *U.S. v. Bayshore Assocs., Inc.*, 934 F.2d 1391, 1400 (6th Cir. 1991). There are two types of civil fines: The first kind is payable to the complainant as compensation for damages caused by the contemnor's noncompliance; the second kind of fine for contempt is payable to the court, but defendant can avoid paying the contempt fine by performing the act required by the court's order. *See id.* at 1400-01

In the instant case on December 6, 2005, Judge Gwin granted Plaintiff's motion to enforce the settlement agreement and expressly stated that "[t]he [settlement] [a]greement thus bars Tapco from asserting patent infringement claims related to Dinesol's custom shutters in the [Michigan Litigation]." Enforcement Order at 7. Judge Gwin clearly expressed that Tapco could not assert patent infringement claims related to Dinesol's custom shutters in the Michigan Litigation. The undersigned notes that Judge Gwin did not distinguish between Dinesol Products or Dinesol Plastics. Further, Judge Gwin entered the Enforcement Order after Dinesol Plastics had been added as a party-defendant in the Michigan Litigation.

In Judge Gwin's subsequent order denying Tapco's request for stay pending appeal, the Court could not have been more clear regarding the meaning of the Enforcement Order stating "The purpose of the [Enforcement Order] was to *enjoin Tapco from prosecuting its lawsuit against Dinesol . . . in the United States District Court, Eastern District of Michigan*. To stay the Order pending a decision in the Federal Circuit would allow the Michigan litigation to continue, with all the attendant costs." ECF Dkt. #65.

The undersigned concludes that the Enforcement Order expressly orders Tapco to stop pursuing the Michigan Litigation altogether.  Tapco, with knowledge of the order (which it appealed), has not stopped pursuing the Michigan Litigation and thus has violated the Enforcement Order from December 6, 2005 onward.  *See* ECF Dkt. #s 65, Exs. B-D, 67, 68 (delineating Dinesol Products' activities in the Michigan Litigation and the instant case in an effort to obtain Tapco's compliance with the Enforcement Order).

The undersigned therefore recommends that Tapco should be found in contempt of the Enforcement Order and ordered to compensate Dinesol Products for its Fees and Costs as a result of Tapco's noncompliance totaling $ $55,630.10.  Tapco's argument that it has only recently prosecuted its case against Dinesol Plastics in the Michigan Litigation lacks merit.  Even assuming this is true, Judge Gwin did not distinguish between Dinesol Products or Dinesol Plastics in his Enforcement Order, which clearly calls for the Michigan Litigation to stop.  Second, Dinesol Products has sifted out expenses attributable to Dinesol Plastics in the Michigan Litigation; thus the Fees and Costs only represent expenses attributable to Dinesol Products in the present case and the Michigan Litigation in its effort to force Tapco to comply with the Enforcement Order as it applies to Dinesol Products only.

**III.    CONCLUSION**

The undersigned finds that Tapco is in contempt of the Court's Enforcement Order. Therefore, the undersigned recommends that Tapco be ordered to compensate Dinesol Products for its Fees and Costs totaling $55,630.10.


Dated:   March 2, 2006                                    /s/George J. Limbert
                                                          GEORGE J. LIMBERT
                                                          UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).